We have our second case of this afternoon, the number 20-3638 Matrix Distributors Inc at all. The National Association of Boards of Pharmacy at all. And we have Mr Conan for the appellants and Miss Messrs Casey. Mr Casey for NAPB, National Association of Boards of Pharmacy and Mr Asmus for patron. Okay, Mr Conan, whenever you're ready. Okay, thank you, your honor. If it please the court, if I could reserve three minutes for rebuttal, no problem at all. Uh, your honor, my name is brian Coleman. I'm with the firm of Barkley Damon. We're appearing today on behalf of the appellants, primed pharmaceuticals and oak drugs. In this by the defendant Optum Rx of a requirement that all pharmacies, uh, pharmacy benefit network, uh, source, uh, pharmaceuticals, secondary wholesalers that had obtained called fraud accreditation from the other defendant. In this case, the National National Association of Board of Pharmacy. I think I'm sorry, the section 1983 claims where I'm having a big problem is how is in a the state actor? Sure, your honor. I think that that obviously is the threshold question that we have to deal with in this entire case. And I think that as we have let down in our, in our briefs and whether, um, you're looking at under the entwinement theory or the some, the rather closely related, uh, relationship. Mr Coleman. Yes. Optum Rx right that you're not arguing that Optum Rx is a state actor. Are we just talking NABP at the moment? No, no, that would not be correct. We would, we are arguing only if the court finds that NABP is a actor. We believe that then Optum Rx is a state actor, any private actor that has kind of joined itself in partnership with a, with a just just to be clear, proceed. Yeah. If the court finds that NABP is not a state actor, then Optum is not a state. We would concede that point. So you're saying you're saying so if NABP is a state actor, then somehow Optum Rx is as well because somehow it's involved. We would argue that basically having basically enjoying the joint activities state actor in this particular case here, they would be all right. That's, that's, that's going uphill. Let's, let's focus on NABP because that may resolve it. How under Tarkanyan and Brentwood would it be a state actor? Yes. Thank you, Your Honor. With respect to all of those cases, I think it's very Supreme Court has taken the position that these cases are necessarily, you know, they're fact specific. Um, there is not one particular piece of evidence that's going to be dispositive of whether they're a state actor or not. If you look at the court was confined to a state, right? That's correct. And Tarkanyan was with the, I remember well the fight that Jerry Tarkanyan had with the N. C. Double A. And there you have a group across the country. So you're not really citing Tarkanyan. It says basically it has to be within us. If it's within a state, who is the state actor here? What I'm trying to figure out? Well, I think our argument here is NABP, the state actor. I think the issue I think you're getting which state, which state is it affiliated? Well, that's what I'm trying. That's what I'm trying to get at your honor. I think that the point that you're making and I think Judge McNulty made it in the court below is that in order for the plaintiffs in this case to establish that there is that NABP is a state actor, we have to establish that somehow they are acting as a surgeon for some individual state. And we would disagree with that particular proposition. I mean, in essence, uh, you know, as we point out in our papers, there are currently four states that require vaught accreditation in order to be a licensed wholesaler in that state. There are another 22 states that recognize that the vaught accreditation. And what I mean by recognize, it might mean, for example, that if a wholesaler is applying for a license in a given state, if they are vaught accredited, they don't need to go through certain inspections that might otherwise be. Mr Coleman, I think your strongest argument would have been if you had some specific allegations about harming your business in those four states that it looks like from the response briefs that two of the four have since changed their laws. Um, except doesn't look like there's anywhere where you focus specifically on the harm to you in those states. Your theory seems to be that you're being hurt in your nationwide business here. So where have you preserved the challenge that's really specific to those two or four states? I don't think that we have your honor. I think, okay, so you're making a more general argument here, which is that, okay, there are some states in which you automatically get in if you're under OptumRx, but there are other ways in and you're not precluded. It just it makes life more difficult for you. Well, I think I think to focus on the point that you're looking at this, you know, one of the states, for accreditation is a state. Uh, if, for example, uh, one of, you know, a secondary wholesaler had been denied a license by the state of Indiana because it was not bought accredited. I don't think there's any question that that particular set of facts and circumstances. NABP would be a state actor. I think you'd have a much stronger claim. What I'm saying, though, is your argument here. I have not found anywhere where you are saying we are D licensed in Indiana because of X. Your focus here has all been on the inputs, the inputs into NABP, which is NABP is being manipulated by the states. Maybe, maybe not. But if there's not coercion, state coercion, some state penalty or something that comes out in the back end, how can it be state action right in the state action cases like Brentwood? There's a no N C double A. There was, there was, you know, ultimately it wasn't state action. So you can say all you want that some state or states were involved in this decision. But if it's ultimately an advisory one that affects particular insurers and it's not something that says this insurer, this drug company will be penalized, then where's the state action? Well, I think getting getting back, I think I think you have to look at the nature of NABP and this gets us into the various tests that have kind of developed over time. Is there a penalty that comes out of what NABP does? Some state, some fine. Well, no, no, that's not the case, but it doesn't doesn't necessarily have to be. I mean, the practical reality of the vaught requirement and the plaintiffs in this case here, in our view, being denied vaught accreditation based upon inappropriate criteria that are in violation of the D. S. C. Is that essentially our clients are foreclosed from selling pharmaceuticals to the entire, almost the entire drug supply chain. That might be an antitrust violation. That might be a violation of federal law, though. I haven't really seen you conflict and there might even be a violation conceivably of certain New Jersey common law. But in 1983, it requires a state actor. Tarkanyan requires it says that the N. C. Double A. Was not a state actor because the significant part because Nevada not play a significant role in crafting the N. C. Double A. Rules that affected coach Tarkanyan. And and yet, while that case is good law hasn't been overruled. You only cited once, I think, on page 30 of your brief and I'm having trouble seeing how can you get around it? You can't just ignore it. No, we're not ignoring it. I think first of all, I think, you know, the there is a unique set of circumstances in the Tarkanyan case because in essence of the court kind of discusses towards the tail end of the decision is that in that particular case, you know, there was a discussion as to what data was a state actor. The court also recognized that as a practical matter, the state of Nevada and the N. C. A. A. The series in that particular situation, they were not essentially where their interests were aligned. And the whole point behind the state actor theory, whether just look at an entity that led to Judge Beavis's question. Okay, there are four states that are particularly relevant here. And yet there's no argument that any of those four states were in were so involved in this process that they would be the predominant player or, uh, even had a significant role in crafting the particular roles that were in play here. Well, I think that this gets us back your honor to the whole nature of N. A. B. P. And the whole entwinement big part to begin with. I mean, we look at you look at N. A. B. P. Every single one of its member state boards are a state actor. Every single member of its executive committee is a state actor. You see state actor. They are states, but they are not necessarily acting as states in in the actions that are occurring here. So calling them state actors, I think by you is is putting in a term that you haven't proved us yet demonstrated us yet belongs there. I'm saying, for example, a state board of pharmacy. I don't I think it's fair to say, with all due respect, they are a state actor. Okay, but what has happened is you have to be acting on behalf of a particular state. And which particular state are you realize? Well, that's what if what we are seeing in this particular case here is that essentially, getting back to my example, Indiana from before, I think there would be no question that there is a state actor. I think what we are essentially arguing in this particular case here is that N. A. B. P. And essentially their member state boards cannot collectively do what a single state member board could not do on its own. And in that particular and for that reason, in a case where there is no question that the member state boards are entwined with the operations of N. A. B. P. And where there is, it's clearly I think the record shows that there are joint beneficial activities between the states and N. A. B. P. That comes in the form of both the kind of offshoring or offloading of regulatory risk of responsibilities by the states to N. A. B. P. And in an exchange, N. A. B. P. Is, you know, be gone from being kind of a mom and pop shop back in the 1980s. So now this, you know, behemoth that's now bringing in 35,000 $35 million a year in annual revenues. It has 150 employees. It is taking on all sorts of activities that the states would ordinarily otherwise be doing. Pharmacy licensure reports to the National Practitioner Data Bank. We talked before about the number of states that were vaught accreditation is required. There are other accreditation programs that N. A. B. P. is taking on. And then when you get back to the last piece of this with respect to how is the action complained of the vaught accreditation linked to any of these joint beneficial activities? I think it's very clear it falls right within the ambit of of the activities, um, that, uh, you know, make it so that, you know, it would be fairly. It would not be unreasonable to impose upon N. A. B. P. As it performs these duties. And, you know, we've cited to the, uh, statements of the executive director, Mr Cat is on in our brief. He said that the vaught program was developed by N. A. B. P. Quote under the direction of the state boards of pharmacy, close quote, and that through vaught N. A. B. P. Accredits wholesalers quote on behalf of the states, close quote. But how does get into that? How? Optimize wasn't forced by N. A. P. B. To adopt the criterion it did of who was going to deal with. Correct. That's an optimal Rex in 2016 decided that it wanted to impose upon its pharmacy network. The requirement that didn't have to, but by doing so, it injected itself into the situation here. It's a private actor. It chose to do it. Maybe you got an antitrust problem. Maybe you got a conflict with federal health law. But where's the state coercion? Where's the penalty? Where's the what's the what makes this actionable under 1983? I think your honor, I think we're looking at this in terms of from an economic reality situation here. I think you have a more interesting argument to make under federal common than you do under state actor. And I would be more interested in hearing you talk about that. And then after that, I'd be interested in hearing you talk about the New Jersey due process common law. Okay, so you preface it by telling us whether you in fact preserve the federal common law argument. Yes, I couldn't. Yes, we believe that we did your honor. I mean, I think if you if the complaint and um, it was, it was a generic common law count. Uh, we cited to, um, recognizing that this was an alternative theory before the court below. We decided to both federal cases as well as to New Jersey state law and arguing about it. Um, pick a pick up on, you know, Judge Roth's point is that I think the argument from our perspective is, you know, if they are a state actor, then there comes a point in time where this court is going to look at the situation as to whether they are a quasi public entity that is involved in an area of vital public concern. And if they are, there is the federal common law that kind of stems from the Seminole Falcone case that was decided ironically in the state of New Jersey. And then both the New Jersey state cases as well. That's that that provide that where we have economic necessity as we do here and a situation where N. A. B. P. Is essentially exercising monopoly power over the area of accreditation. Um, that was certainly the case when our X came imposed this requirement in 2016. It was not until 2019 that there was some, uh, that a second accreditation entity came into play. But at that point in time, uh, it was because of the economic necessity and the fact that any BP exercised a monopoly in in this particular accreditation area, we would argue that if the court were to conclude that they're not a state actor at a minimum, they are a quasi public entity for whom, uh, reasonable due process must attach. And in this particular case here, uh, it was inappropriate for the court below to dismiss this at the motion to dismiss stage. And I think the other key point on this area that N. A. B. P. Raises is that there is this notion that somehow we had to be a member of something in order to have a common law due process claim. And we believe that that is clearly not right in the Falcone case that talks about a medical society in which the doctor was not a member. And in, uh, the more case where it involved the labor union, the court very clear to draw distinctions between fraternal organizations and organizations of business necessity. Mr Coleman, the cases you're citing the cases you're citing are, as you say, like Falcone are about an organization's exclusion of these principles of law, New Jersey law in order to cover this situation because your claim is not that your clients were excluded from membership. Well, essentially, we are in this particular way we were excluded from from attaining accreditation. And I think the cases, um, the federal cases that we cited in our brief are very clear on the point is that where they're involved in as N. A. B. P. Is a particular case here in, uh, areas of and are almost like a quasi regulator. Uh, that at that point in time, they are a quasi public entity for who it is reasonable to to impose due process requirements upon. But in the federal cases, you had title for funding federal funding from the government, right? There's there were some in that case there, but there's also cases that that involve education. But there's others that involve, uh, the ability to, uh, you know, carry on with schools and the like. We understand there's a Marjorie Taylor case that was another accrediting case that, uh, imposed that actually that case there, although it was overturned on other grounds, actually did rule that they were a state actor in that particular case. But getting back to Judge Beavis's point, I don't believe it. I don't believe that the case is on page 34 and 35 of your opening. Okay, I do see you mean Marjorie Webster. Marjorie Webster. I'm sorry. Yes. Yeah. Which? Okay. I'm sorry. I have somebody else's name from the news on my brain, I think. Yeah, I think that's it. I don't think Marjorie Webster exists anymore. Yeah, I'm sorry about that. But you're mixing and matching the federal and New Jersey. Let's let's just deal with the federal. One of the most basic conditions that must be met before you can have federal common law involved is that it must be necessary to protect a uniquely federal interest. What is the uniquely federal interest here? I think in this case here, it's, you know, we have, there's a place where the court, I'm sorry, where Congress has stepped in with respect to the regulation of the drug supply chain. And, uh, you know, we have the defendants in this particular case here, you know, through the imposition of, uh, criteria that go beyond, uh, the D. S. C. S. A. Which hasn't expressed preemption provision in it. Um, you know, it is clearly something, uh, that would be of import, uh, for for federal common law purposes. What about the the, uh, decision of the private third party Optima Rex, uh, to adopt the requirements that it did? Isn't that again, a private third party stepping in who is creating the problem that you're complaining about in your complaint against, uh, N. A. P. B. Well, I think we, well, the issue in this particular case here is with respect to N. A. B. P. Is that N. A. B. P. Everything kind of flows from what happens with the N. A. B. P. In this particular case here, there is no due process as it pertains to the vaught application process for folks that are involved. Just so I can kind of give you, I don't want it just so the court understands the terms that we are using is that someone that submits an application to N. A. B. P. For accreditation. One of two things. It's either going to be canceled, which is what happened in the cases of the plaintiffs in this particular case, or it's going to be denied. And usually when it's denied, it's somebody that has already obtained, uh, already been accredited by N. A. B. P. So what's happened in the case that we have here as it relates to the applicants that are being that are merely being canceled is there's essentially being told you have to reapply. There is no way for them to challenge the standards against which they are being held, which in this particular case we believe are violative of federal law. There is no new. There's there was kind of a hiding of the ball under numerous circumstances for in one of the cases here, there was a situation where the N. A. B. P. Denied the accreditation because they had allegedly sourced pharmaceuticals from a pharmacy. There's no such prohibition in federal law. And yet N. A. B. P. Refused to identify what the supposed problematic source was when it came time to go through this process. And then the alleged harm is being caused by independent third party. Well, no, they're not independent in the sense that essentially optimum and N. A. B. P. In this particular point in time to use their term. This was a partnership because what happened was N. A. B. P. Going all the way back to 2006 when the vaude program was established, was looking to try to impose its ideal of the regulation of the drug supply chain. It tried to lobby Congress to do that. It was unsuccessful in its efforts to do so. And then what happened was Optum comes along and because of the economic necessity attendant to having to have be participants in their network when they partnered with N. A. B. P. To say if you do not have vaude accreditation that you cannot participate in our network, it's 67,000 pharmacies across the country. It's virtually every pharmacy across the land. Um, so at that point in time, that's like arguing that Facebook is a state actor or Amazon is because if you can't sell your books on Amazon, you're gonna lose a lot of money. I don't doubt there's economic harm here, but you can't jump from the economic harm to saying thus its First Amendment censorship and Amazon is violating my constitutional rights. No, I think that this your honor, this is more into the Baffert versus New York Racing Association case that we cited to in our reply brief and that essentially because of the, you know, any BP has tried to make the point that because we are not the one that's doing the license, we are not. We can't be a state actor in the Baffert case. What the court held was is that even though it was the New York State Gaming Commission that was the one that licensed the horse trainer in that particular case, the action to exclude the horse trainer from the ability to participate in racing in the state of New York was made by the New York Racing Association. That could be the harm that was necessary in order to to provide the basis for a deprivation of a property interest and for there to be a potential due process violation and by extension, a three claim where the court ultimately ruled in favor of the horse trainer and awarded over $100,000 in attorney's fees attendant to the preliminary injunction application in that particular case. So I know that I'm way past my time at this. What would do is I have some questions on the New Jersey due process, but we'll get you back in rebuttal to deal with those. Okay, thank you. Your honor. Thank you. Mr Casey. Good afternoon. Your honors. My name is Brian. Maybe we have you have 10 minutes. I don't know. I'll let my colleagues decide to what extent we really have many questions for Mr Asmus. But so we're gonna spend maybe more than 2 3rds of the time with you. I am quite sure Mr Asmus would be happy to have me take as much of his time as he would like. Um, music to my ears. Yeah, good afternoon. Your honors. My name is Brian Casey. I'm here on behalf of, uh, uh, the National Association of Courts of Pharmacy, otherwise known as N. A. B. P. Um, I am splitting time with Mr Asmus. I had expected to take about 10 minutes of 15 minutes, but I'm happy to take us as much or as little time as you would like. One of the questions is in connection with the particular state. It's kind of tough to say it's one particular state here because the, uh, N. A. B. P. S. Members almost entirely made up the state boards of pharmacy from myriad states, if not all of them. Why can't you just Why is it enough that you just show involvement or employment with several states? Shouldn't that be enough for 1983 purposes? You know, it shouldn't be your honor. Um, that both the 14th Amendment and any state you'll do or what no state you'll do. Um, the argument would be here that it's pretty much any any state you can think of. Well, the Supreme Court in Tarkanian, I think, pretty effectively foreclosed that in Tarkanian, the N. C. A. Was characterized as speaking, uh, on behalf of the collective membership, speaking as a group instead of on behalf of any particular state. And that was among the reasons why the Supreme Court in Tarkanian said that the N. C. A. Was not a state actor. Um, as a matter of fact that they there aren't any cases that, uh, but I'm just thinking a lot is the N. C. Double A. Made up of state actors, state boards. I mean, yes, there are state universities that are state board, the California State Board, etcetera. It's it would seem that that well, that it isn't qualitatively different. But that leads to, uh, an important question. Any BP? Uh, its members consist of the boards of pharmacy of all 50 states, the District of Columbia, 10 Canadian provinces, a number of U. S. territories and Barbados. It includes members that are not in any way even part of the United States, let alone, uh, governed by the 14th Amendment. Um, to one of your particular examples was the New Jersey Board of Pharmacy. Yes, the New Jersey Board of Pharmacy is a member of any BP. But I just bought pharmacy dates aren't the state's active members, whereas the Canadian provinces and and the other non U. S. Boards of Pharmacy are not active members in the same way that the state boards of pharmacy are that there are. There's a difference in terms of voting. That said, the D. C. Board of Pharmacy, which is also not governed by the 14th Amendment, is a is a voting member, as I understand. But to get back to, uh, uh, Judge Ambrose point. Uh, the New Jersey Board of Pharmacy is a member of the, um, of any BP. And the New Jersey Board of Pharmacy is not, in fact, the entity within the state of New Jersey that licenses wholesale distributors so that there is there isn't even an overlap in the particular state where, uh, Mr Collins clients do perhaps the most business. They neither New York nor New Jersey require any kind of body accreditation at all. As Mr Coleman pointed out, there are four states that have some degree of requirement. I'd like you, Mr Casey, to focus on Iowa, Indiana, Wyoming and North Dakota. I mean, those are states. Is it? Is it correct that they would be barred in those states from applying their trade if their pleadings had he specific to those states? But if we had a different suit in front of us that involved those four states, wouldn't there be state action and just debarring people from doing business in those four states at all? No, because the, um, number one, each state Board of Pharmacy retains the discretion to, uh, to, uh, to license wholesale pharmacies. Um, even absent a vaude accreditation, a number of the states don't speak in particular to, uh, bought accreditation as in particular, but speak to third party accreditation. Um, several states now allow the other third party creditor and, um, one that accreditation is simply a substitute for obtaining a bond. And in each of those states, there also is a degree of reciprocity so that if if entities are licensed in state one, even if, uh, they are, there's a vaude requirement in state to, uh, it certainly is possible that that because of reciprocity, they would still be licensed. And to get back to your prior point, your honor, they haven't made any allegations that they are, uh, licensed in any of those states. They certainly haven't made any allegations that any of their licenses have been revoked or had any enforcement proceedings against them in any of those states. There's nothing about any of those states, um, that really is germane here. I think that the much more important point is 46 states don't have vaude accreditation or even any kind of third party accreditation as requirement. And in each instance, it is ultimately the state, uh, entity itself, whether it's the, uh, you know, board of pharmacy or a different entity that actually does the licensing. Okay. Um, and that that is similar to, uh, you know, several third circuit cases like the McKees port case, uh, that talked about, uh, the A. C. G. M. E. The accreditation entity for graduate medical education. And they said, Hey, you know, uh, this accreditation is simply a tool that the state agency does. The state agency hasn't delegated responsibility to that entity to make the final decisions. It still is the state agency that makes the final licensing decision. And, you know, as a result, even in those four states, it is the state itself that ultimately makes the licensing decisions. And as we said, they haven't alleged at all that any licenses have been impacted at all. And in fact, they mhm. You state boards of pharmacy are members, are they not? Correct. And so if they are members, wouldn't that make an A. P. B. At the very least, a quasi public organization? No, Your Honor, it wouldn't. Because whether you're common law or the New Jersey common law, I'm gonna Yeah, I'm gonna shift to the New Jersey common law. Okay. Um, under the New Jersey common law, uh, the Falcone case, the more case on the Matthews case, each of those are very different in Falcone. And in more, it was a in Falcone was a doctor who had been a member of the society and ultimately was not allowed to be a of medical doctor. Um, and, uh, so he was being denied accreditation. Um, uh, basically excluded from membership in this organization that basically had a lock on. You couldn't practice. You couldn't practice surgery in the county if you weren't a member of the county society. Uh, here, um, as as they alleged in their complaint, they're still doing business. None of their side. This is not just about damages because each of them have, in fact, been been accredited. Um, but this hasn't. They haven't said that, uh, you know, they have lost licenses as a result of that. So it is. So in Falcone, it absolutely was exclusion from, uh, a an occupational society that was a prerequisite to doing business. Same with more in more. That was, uh, itinerant union workers that were part of a different union were for arbitrary reasons being prohibited from joining this particular union. As a result, they weren't able to work in that particular area. It's again, exclusion from from membership in a society that is basically a prerequisite for for for employment. And Matthews, which is was basically, uh, a association was saying you had to be a resident of a particular area in order to have access to the beach. And they said that was, um, you know, you can't do that. That isn't for the public good. Uh, things of that nature. Um, here we have, uh, any VP is simply a third party independent accreditation agency. I have likened it. It's it's a good housekeeping seal of approval for wholesale distributors. Okay? Um, we aren't preventing people from doing business. And as, uh, as previously been said, you know, the only reason this became an issue was because optimum thought it would be a good idea to have its network pharmacies, um, only buy from wholesale distributors that had that accreditation. Okay, so what you have is two private actors, one of whom decided to be a good idea to have, um, uh, have its its people. It does business with, um, only buy from people that that N A. V. P. Accredited. There just isn't state action here. Um, so, uh, so, so that that's what I'm just trying to think of it. What if you had these state boards there at this meeting and they say, Look, we don't really want the small players to be involved. And we we just don't think they should be accredited. Period. And something you say from the N. A. P. V. Uh, why is that? We just don't want him. Mhm. Don't they have a cause of action? I don't think they would, Your Honor, because there's still it's still a private entity. What kind of cause of action would they? I mean, they're saying we control you. We're your members. N. A. P. V. In this hypothetical, I'm not saying it's this case, and we don't want any small players. And we're telling you this is what we collectively want. That is more than the consensus of our group. Just don't give them whatsoever. Well, I have a hard time thinking of what them having any kind of Section 1983 type. Let's go to Jersey. Common law for for due process. No, because and again, the New Jersey is actually the most interesting example because the New Jersey Board of Pharmacy isn't even the entity that licenses them. They could go on their merry way and continue to be licensed in the state of New Jersey and continue to run their wholesale distributor business, regardless what any piece has, regardless what it what Optum requires. And they, in fact, did that. I mean, they were licensed for a number of years before Optum instituted this requirement, and they have continued to be licensed throughout. Um, they have not, uh, you know, had any licenses remote revoked or had anybody even talk about that. What are the elements that are required under New Jersey common law for due process in connection with somebody either being denied membership or denied accreditation? Well, if it has only been used and more etcetera, it has only been used in the context of exclusion. Uh, no, no, no, no, no. My question to you. What are the elements that are required in order to show a violation of New Jersey common law for due process? I think you have to show that they are excluding someone from a organ from an association that is tantamount to being a prerequisite to doing business. Okay. And if that is, in fact, the case, then they said some degree of due process might attain to that. And that's not what we have here. My recollection is that the elements that will be required is or are would N. A. P. B. B. A. Quasi public entity. And two would N. A. P. B. P. Be acting arbitrarily. And my hypothetical to you was one where people were acting arbitrarily. And I would have thought you might have come back and said to me, but nothing here shows that in any way, uh, N. A. P. B. P. B. B. P. Acted for anything other than health and public safety and certainly not arbitrarily. Well, certainly I was trying to take your your hypothetical. What? What are the elements? And I thought the elements were cause a public organization and that cause a public organization either denied accreditation or membership in an arbitrary fashion. Wouldn't I? Am I wrong about those elements that those are among them? Among the other ones would be there. There needs to be a protectable property interest, um, in the first instance. And here there isn't one. Um, in order to have any due process before due process kicks in at all, there needs to be a protectable property interest. Mere expectation or aspiration of accreditation under New process into a property interest that is cognizable, uh, or gives rise to a kind of and what would that property interest be? It could potentially be a license. I mean, there's an important distinction between revoking a license and other types of expectation interest. And here they don't allege, and they certainly hasn't had any licensing, you know, actions taken at all. Okay. Um, I would be happy to talk at you as long as you want. I am sensitive to the fact that I have gone over my time. So you're on our time. Don't worry about it. Uh, I asked my colleagues this. Does either of you have any questions of Mr. Asmus? I have no further questions. I've done, but Mr. Asmus, the next one. Oh, I'm sorry. Up is optimum. Rx is counsel. Judge Bibas. Do you have any questions of optimum? Rx Council? No. Okay. I don't. I don't either. So, uh, we'll go back and we'll get on rebuttal. Mr. Conan, then, please. Thank you. And thank you very much, Mr Casey. So, Jim, bro, maybe I think to pick up where both with your hypothetical and I end of Mr Casey as it relates to the question of the elements of a New Jersey claim. The hypothetical you post really is not that far off from what we have here. Um, you know, as I understood it, actually, I think there's maybe four elements I gave to Mr Casey out of the third, and there probably would be a fourth would be actually damages. But there would be a protected interest now, which means acting in effect arbitrarily, a interference caused the loss of a of a, uh, perspective gain or property interest in some way, shape or form and damages. And on this one, I don't see where N. A. B. P. Has acted in a way that's arbitrary. Well, I think that the question well, first of all, I think on that particular score, your honor, the question this is this was on a motion to dismiss. We're not. This is not a case where we were deciding the case on a motion for summary judgment. Plaintiffs have clearly argued in this particular case here that any BP has acted in an arbitrary and inappropriate manner. Well, I think one by imposing in a impermissible criteria, uh, in impermissible requirements in order to obtain flawed accreditation in this particular case here, that's one. The issue in terms of prohibiting, uh, the wholesalers from sourcing from a pharmacy and to imposing heightened scrutiny, if you will, or making, uh, transactions with dual license and somehow suspect, which does not fall into the term of a suspect transaction under federal law. Um, but, you know, in this particular case here, the property interest that, uh, that we are talking about is an occupational license. And to the case that I said it before for Judge Beavis, the bat, the Baffert versus New York Racing Association case before is where you have an entity, whether they're licensing or not, that is essentially excluding a part of a party from us being able to participate and take use of that occupational license. It can satisfy the standard for a property deprivation. In that particular case, there was the ability of a horse trainer to be able to was based in California. So he had other options to be able to race his horses within the state of New York. I mean, I think that the point that, uh, we talked about with the Falcone case that was raised before, um, by the, by the, the argument that any BP is making here is that, well, you could go and you can operate in the county next to Middlesex County. Therefore, you're not harmed. And, and, and the New Jersey State Supreme Court explicitly rejected that argument. But my question to you is of that one of the four elements arbitrariness or malice. What evidence is there alleged with respect that the N. A. B. P. Argued in that way or the allegations? Well, the allegation in this case, I think, is twofold. Your honor. It is one that they applied impermissible criteria and two is that there was no meaningful due process at all. I think under the due process cases have been very clear that there's basically three elements is that you're gonna have in order for there to be reasonable process is that you're gonna have to have notice of what was the problem. Um, and then you're gonna have to have some sort of mechanism through which to challenge the denial and then the and then have decision making by a neutral, uh, decision maker. And in this particular case here, as we laid out with respect to the process through which canceled applicants are subjected, there is no neutral decision maker. There's no process at all. I mean, the irony of it is here is that this baby gets into this whole distinction between membership and non membership that I think Mr Casey is relying upon is that it is any B. P. Does provide process to those applicants that have been accredited and that are to use the term of art are being denied. But they provide no process whatsoever to those that have that have been canceled, which is the situation in which our clients found themselves. They had to submit repeated applications. And as we point out in our papers, the fact that they after the litigate, this litigation was commenced based upon almost identical record, they were subsequently accredited in regards to a presumption that the reasons that they were denied before this for the first couple times around is that those decisions were arbitrary. Anything further that you wanted to add on this point? No, Your Honor. And I know that there are some other topics that areas that we didn't cover. But unless the court is any questions on those areas, um, uh, I have further questions. Judge Roth. Judge Beavis. Nothing further. Judge Beavis. Nothing. Okay. Thank you. Thank you to both counsel for. Uh, sorry, Mr Rasmus. We didn't get you in on the parade here, but, uh, we really didn't have any questions of you. Thank you to, uh, measures Casey and called in for, uh, well presented arguments and we'll take the matter under advisement and adjourned for today.